# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| VERONICA STEWART, *et al.*, | : | Case No. 1:16-cv-1056 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| JIM NEIL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING PLAINTIFFS'
## MOTION TO COMPEL (Doc. 62)

This case is before the Court on Plaintiffs' motion to compel discovery from

Defendant (Doc. 62) and the parties' responsive memoranda (Docs. 63, 64).

## I.  BACKGROUND

### A.  The Underlying Allegations

Plaintiff Kelli Moll, a Hamilton County, Ohio resident, and Plaintiff Veronica

Stewart, a Clermont County, Ohio resident, have filed suit against Defendant Jim Neil

("Defendant" or "Sheriff Neil"), in his official capacity as the Sheriff of Hamilton

County, Ohio, for violations of 42 U.S.C. § 1983 ("§ 1983") and 42 U.S.C. § 12131 (the

"ADA").  (Doc. 1 at ¶¶ 4–7, 20–52).  Ms. Moll has filed suit in her individual capacity.

(*Id.* at ¶ 5).  Ms. Stewart has filed suit on behalf of Lily Jeannette Francis.  (*Id.* at ¶ 4).

Ms. Francis, deceased, was Ms. Moll's unborn daughter.  (*Id.* at ¶¶ 4–5).

In January 2014, Ms. Moll was incarcerated at the Hamilton County Justice Center

("HCJC"), pursuant to a pending community-control sanction violation.  (*Id.* at ¶ 13).  At

the time, Ms. Moll was a recovering drug addict, Ms. Moll was pregnant with a daughter (Ms. Francis), and Ms. Moll was due to deliver her daughter in a few weeks. (*Id.* at ¶¶ 5, 13). Given her condition, Defendant's employees/staff placed Ms. Moll in HCJC's medical pod. (*Id.* at ¶ 14; Doc. 62 at 2). HCJC's "medical pod" refers to HCJC's on-site medical facility. (Doc. 1 at ¶ 14; Doc. 62 at 2).

Plaintiffs allege that, while Ms. Moll was housed in the medical pod, Ms. Moll complained that she was experiencing pain/contractions. (Doc. 1 at ¶ 14). However, Ms. Moll's complaints were not promptly heeded. (*Id.*) Defendant's employees/staff waited two days to transport Ms. Moll to the hospital. (*See id.* at ¶¶ 14–16). And even when transport occurred, there were multiple delays. (*See id.* at ¶¶ 16–19). The transport team waited until a "shift change" to leave HCJC. (*Id.* at ¶ 17). And the transport team made multiple stops on the way to the hospital. (*Id.* at ¶ 18 (alleging that the transport officers stopped twice—once to get soda, and again to get sandwiches)).

After Ms. Moll arrived at the hospital, she learned that her unborn daughter had passed away. (*See id.* at ¶ 19). As such, Ms. Moll was induced for delivery due to intrauterine fetal demise. (*Id.*)

Plaintiffs commenced this case against Defendant on November 7, 2016.[1] (*Id.*) In their Complaint, Plaintiffs allege that Defendant has violated § 1983 by, *inter alia*:

---

[1] Plaintiffs' Complaint names several Defendants: Sheriff Neil; Hamilton County, Ohio; Board of Commissioners for Hamilton County, Ohio; Sheriff's Department for Hamilton County, Ohio; and John/Jane Does. (Doc. 1 at 1–2). However, all of the Defendants except Sheriff Neil have been dismissed from this case. (*See* Docs. 12, 25). The newly elected Sheriff should likely be substituted or added as a defendant.

(1) failing to adequately hire, train, and/or supervise the employees/staff who interacted with Ms. Moll at HCJC; and (2) failing to maintain adequate policies, practices, and/or customs regarding the treatment of HCJC inmates with medical conditions. (*Id.* at ¶¶ 20–44). Plaintiffs also allege that Ms. Moll was discriminated against in violation of the ADA. (*Id.* at ¶¶ 45–52).

## B. The Discovery Proceedings

### 1. *Discovery requests*

After this case commenced, Plaintiffs served discovery requests on Defendant. (Doc. 62 at 3). The discovery requests sought to identify the persons Ms. Moll had interacted with at HCJC. (*See* Doc. 62-1). For example, Interrogatory No. 5 sought the identities of the persons "involved in [Ms. Moll's] supervision and/or medical care"; Interrogatory No. 10 sought the identities of the persons who decided "[Ms.] Moll had to wait until a [] 'shift change'" to leave HCJC; and Interrogatory No. 11 sought the identities of the persons "who transported . . . Ms. Moll [to the hospital.]" (*Id.* at 4–7). Additionally, Interrogatory No. 2 sought the identities of any persons suspected to have "knowledge and/or information relevant to the instant action . . . ."[2] (*Id.* at 3).

On July 17, 2017, Defendant served discovery responses on Plaintiffs. (Doc. 63 at 4). However, the discovery responses contained little substantive information. (*See* Doc.

---

[2] The discovery requests also directed Defendant to produce the following documents: "[a]ll documents relating or related to the instant action, including, but not limited to, Plaintiffs' Complaint and Defendant's defenses thereto" (Document Request No. 1); and "[t]he personnel files (and/or any other such work-related file and/or document maintained by Defendant) for each and every person identified in response to Plaintiffs' [Interrogatories]" (Document Request No. 2). (Doc. 62-1 at 7).

3

62-1).  The discovery responses *generally* informed Plaintiffs that Ms. Moll's medical

providers, Defendant's employees/staff, and certain other categories of persons "may

have knowledge" related to the instant action.  (*Id.* at 3–4).  But the discovery responses

did not identify Ms. Moll's medical providers, Defendant's employees/staff, or any other

nonparties by name.[3]  (*See id.*).  Instead, the discovery responses represented that most of

the identities Plaintiffs sought were either "not in Defendant's possession" or "unknown

at this time."[4]  (*See id.* at 4–7).

As discovery progressed, Defendant did produce records identifying several of the

medical providers who had treated Ms. Moll at HCJC and one of the transport officers

who had taken Ms. Moll to the hospital (Officer Harris).  (*See* Docs. 63-1, 63-2, 62-3, 63-

4).  <u>However</u>, according to a certification submitted by Plaintiffs' counsel, Plaintiffs'

attempts to obtain additional identities were unsuccessful.  (Doc. 62 at 7).  In relevant

part, that certification states as follows:

> 2) During discovery, Plaintiffs inquired regarding the identity
> of certain deputies/employees/staff of Defendant.
>
> 3) Defendant maintained it did not possess and/or would be
> unable to ascertain such information.  Plaintiff took Defendant
> at its word, and thought the information was lost . . . .
>
> 4) Additionally, Plaintiffs inquired regarding the identity of
> other inmates housed in [Ms.] Moll's cell on the "medical
> pod."  Defendant expressed its inability to provide this

---

[3] The only specific individuals identified in the discovery responses were the parties—*i.e.*, Ms. Moll, Ms. Stewart, and Sheriff Neil.  (*See* Doc. 62-1).

[4] To be precise, the discovery responses represented that the primary custodian of any information responsive to Plaintiffs' Interrogatories would be NaphCare, Inc.—a third-party Defendant had contracted with for the provision of medical services.  (Doc. 62-1 at 5).

> information as well. Later, Defendant asserted, even if it could
> ascertain such identities, it would not be able to provide them
> pursuant to [the Health Insurance Portability and
> Accountability Act ("HIPAA")].

(Doc. 62 at 7; *see also id.* at 4).[5]

### 2. *Deposition testimony*

On December 4, 2018, the discovery period concluded. (Not. Order, Nov. 6, 2018). At the time, it does not appear that the parties had taken a single deposition. (Docs. 40, 42, 52, 66). As such, the parties agreed to depose several witnesses post deadline. (*Id.*; *see also* Doc. 55 at 4). The parties deposed: Ms. Moll on January 3, 2019; Ms. Stewart on January 12, 2019; Officer Harris on February 27, 2019; and Sheriff Neil on May 10, 2019.[6] (Docs. 40, 42, 52, 66). Importantly, at the last post-deadline deposition (Sheriff Neil's), new information came to light. (Doc. 62-2). Sheriff Neil indicated that, notwithstanding Defendant's prior representations, the Sheriff's department had the ability to produce the identities of the employees/staff and inmates who had interacted with Ms. Moll at HCJC. (*Id.* at 2, 4–5).

---

[5] Notably, the certification does not explicitly state when Plaintiffs first asked Defendant about the identities of the inmates housed in the medical pod with Ms. Moll. (Doc. 62 at 7). However, based on context, it appears that the inquiry occurred during the discovery period. (*Id.*) Moreover, while Defendant challenges the specificity with which Plaintiffs' formal discovery requests sought these inmate identities, Defendant does not contest that Plaintiffs otherwise asked about these inmate identities during the discovery period. (Doc. 63 at 3–4; *accord id.* at 8–9). Accordingly, the Court will assume that Plaintiffs did inquire regarding the identities of the inmates housed in the medical with Ms. Moll during the discovery period, in addition to issuing a formal discovery request for the identities of any persons suspected to have "knowledge and/or information relevant to the instant action . . . ." (Doc. 62-1 at 3; *see also* Doc. 62 at 4, 7; Doc. 63-6 at 1; Doc. 64 at 2).

[6] In the midst of these post-deadline depositions, Defendant filed a motion for summary judgment. (Doc. 43). All briefing on that motion is presently stayed. (Not. Order, Mar. 6, 2020).

Specifically, Sheriff Neil indicated that the Sheriff's department could produce the identities of the employees/staff who were on duty during Ms. Moll's incarceration:

> Q. Okay. What about the corrections officers who were on duty at any given time, are their assignments for the day tracked and something that we can find out? So, for instance, the plaintiff in this case said -- I mean, she was transported to the hospital, but we would like to know who was in the van with her. . . . How do you document that assignment?
>
> A. We have post assignments for the day. We have rosters that are put out. We're even now starting to put them out months in advance of what your assignment is going to be. And that can change the day of, but we have - - we have rosters that cover who's working where and what time of the day. So it covers it. If you're working in transportation from 3:00 to 11:00 for March the 10th, you can go back to March 10th to see who was working transportation from 3:00 to 11:00 . . . .

(*Id.* at 4–5).

Sheriff Neil also indicated that the Sheriff's department could produce the identities of the HCJC inmates who were housed with Ms. Moll in the medical pod:

> Q. . . . We want to know who [an inmate housed in the medical pod with Ms. Moll] was. How do we find out?
>
> A. Okay. That's cell assignment. You just want cell assignment.
>
> Q. Cell assignment?
>
> A. Cell assignment, yeah. We document classifications - - we have records of where every offender is housed.
>
> Q. And if we're not asking for what somebody's diagnosis was or why they're in the medical pod, just the very fact that they're - - that that was a cell assignment, that would be something that you could release to us, correct?
>
> A. Yeah.

6

(*Id.* at 2).[7]

### 3. *Discovery dispute*

After Sheriff Neil's deposition, Plaintiffs' counsel followed up with Defendant's counsel on July 29, 2019 via email. (Doc. 63-6 at 1). Plaintiffs' counsel stated that, in light of Sheriff Neil's testimony, it appeared that the Sheriff's department could produce certain HCJC employee/staff and inmate identities. (*See id.*) And, in that regard, Plaintiffs' counsel asked Defendant's counsel produce both the "Deputies assigned to transport [Ms. Moll to the hospital]" and the "inmates in the Medical Pod with [Ms. Moll]" by August 1, 2019. (*Id.*) The Court does not have before it Defendant's counsel's response to Plaintiffs' counsel's email (if any). However, it does not appear that Defendant agreed to produce any of the information requested.

After Plaintiffs' counsel sent the aforementioned discovery email, an unfortunate issue arose, Plaintiffs' counsel lost touch with its client (Ms. Moll). (*See* Doc. 54 at 2). According to a filing submitted by Plaintiffs' counsel, Ms. Moll continues to struggle with substance abuse. (*See id.* ("It is no secret that, candidly, [Ms.] Moll continues to struggle with substance abuse.")). And, as a result of Ms. Moll's continued struggle, Ms. Moll was "incommunicado" (*i.e.*, out of contact with Plaintiffs' counsel) between early September 2019 and late December 2019. (*See id.*; *see also* Doc. 55 at 5). Given Ms. Moll's absence, Plaintiffs' counsel was not able to confer with Ms. Moll about the direction of this case. (Doc. 54 at 2).

---

[7] During this exchange, Defendant's counsel again objected that the identities of any inmates housed in the medical pod were protected from disclosure on HIPAA grounds. (Doc. 62-2 at 2).

Plaintiffs' counsel eventually confirmed Ms. Moll's whereabouts on December 27, 2019. (*Id.*). And, three days thereafter, Plaintiffs' counsel filed a memorandum with the Court, stating, *inter alia*, that the parties were locked in a discovery dispute which might require Court intervention.[8] (*Id.*) On February 10, 2020, Plaintiff's counsel contacted the Court to schedule a discovery conference. And subsequently, on February 18, 2020, the discovery conference came before the Court. (Min. Entry & Not. Order, Feb. 18, 2020). At the conclusion of the discovery conference, the Court granted Plaintiffs leave to file a motion to compel discovery from Defendant, limited in scope, however, to discovery specifically requested prior to the discovery deadline. (*Accord id.*).

### 4. *Instant motion*

On February 24, 2020, Plaintiffs filed the instant motion to compel (the "Motion to Compel"), seeking the following categories of information from Defendant. (Doc. 62).

- First, Plaintiffs seek to identify several of Defendant's employees/staff (the "Employee Identities"). Specifically, Plaintiffs want Defendant to produce the names/contact information of the employees/staff who: "guarded/supervised/ monitored [Ms.] Moll while she was housed in the medical pod";[9] "determined how, and at what time . . . to transport Moll to [the hospital]"; and "were in the vehicle when [Ms.] Moll was transported to [the hospital] . . . ." (*Id.* at 1–2).

- Second, Plaintiffs seek to identify several HCJC inmates (the "Inmate Identities"). (*Id.* at 2). That is, Plaintiffs want Defendant to produce the names/contact

---

[8] Plaintiffs filed the memorandum in response to a motion to dismiss for lack of prosecution filed by Defendant. (Doc. 53).

[9] Plaintiffs note that the employees/staff who "guarded/supervised/monitored [Ms.] Moll while she was housed in the medical pod" should "include[e] the person(s) responsible for monitoring inmates, answering calls for medical attention and/or making the decision whether to call for medical staff." (Doc. 62 at 1). The Court finds this clarification unnecessary. The employees/ staff assigned to guard/supervise/monitor Ms. Moll necessarily include the persons assigned to answer Ms. Moll's calls for medical attention and decide whether to call for medical staff. (*Id.*)

information of the "other inmates housed with [Ms.] Moll in the medical pod . . . ." (*Id.*) Plaintiffs are particularly interested in the name/contact information of an "inmate who [allegedly] tried to assist [Ms.] Moll in getting medical attention (by calling out and/or pressing the call button in the cell)." (*Id.*)

• Finally, Plaintiffs seek the production of several documents (the "Documents"). (*Id.*) More precisely, Plaintiffs want Defendant to produce: (1) "Defendant's deputy/corrections officer Training Manual"; (2) "[e]mployment (including training) files/records" for any employees/staff identified by Defendant; and (3) "[r]ecords (including assignment sheets, logs, etc.) reflecting the" identities sought in the Motion to Compel. (*Id.*)

Defendant filed a response in opposition to the Motion to Compel on February 28, 2020. (Doc. 63). Plaintiffs filed a reply in support of the Motion to Compel on March 4, 2020. (Doc. 64). The Motion to Compel is fully briefed and ripe for adjudication. (Docs. 62, 63, 64). This Order follows.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 37, in turn, authorizes a motion to compel discovery responses when a party fails to, *inter alia*, answer interrogatories submitted under Rule 33 or produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B). "Relevant evidence" is broadly defined as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence . . . ." Fed. R. Evid. 401(a).

A district court enjoys broad discretion in managing discovery, and, as such, a district court's disposition of a motion to compel is reviewed only for an abuse of discretion. *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993).

## III. ANALYSIS

### A. The Timeliness Argument

Before analyzing the merits of the Motion to Compel, the Court must address a threshold matter—timeliness.  Defendant argues that Plaintiffs have "waived" their right to seek any discovery from Defendant "by waiting over a year after the close of discovery and through their own dilatory conduct."  (Doc. 63 at 2; *see also id.* at 12–13).  On careful consideration, the Court finds this argument unavailing.

As a general matter, courts are reluctant to consider motions to compel filed after the close of discovery.  *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642–43 (6th Cir. 2018) (collecting cases).  But, that said, courts retain the discretion to do so where "special circumstances" justify their tardiness.  *Kline v. Mortg. Elec. Sec. Sys.*, No. 3:08-CV-408, 2015 WL 6157915, at *5 (S.D. Ohio Oct. 20, 2015); *Nathan v. Ohio State Univ.*, No. 2:10-CV-872, 2012 WL 5342711, at *7 (S.D. Ohio Oct. 29, 2012); *see also Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 682 (10th Cir. 2012) ("The district court has discretion to consider an untimely motion to compel if the movant offers an acceptable explanation for the motion's tardiness." (quoting *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002))).

The discovery deadline in this case expired on December 4, 2018.  (Not. Order, Nov. 6, 2018).  And Plaintiffs did not file the Motion to Compel until February 24, 2020. (Doc. 62).  However, the Court finds that Plaintiffs have articulated an acceptable explanation for the delay, and, therefore, the Motion to Compel warrants consideration. *See Centennial*, 688 F.3d at 682.

In the Motion to Compel, Plaintiffs primarily seek the identities of various employees/staff and inmates who interacted with Ms. Moll as HCJC. (Doc. 62 at 1–2). Based on the record before the Court, Plaintiffs sought these identities from Defendant during the discovery period. (*See id.* at 4, 7; Doc. 62-1 at 4–7; Doc. 64 at 2). But Defendant maintained that these identities were either unascertainable, not in its possession, or otherwise incapable of production. (Doc. 62 at 7).

It was not until Sheriff Neil's May 10, 2019 deposition—which both parties agreed to take after the discovery deadline had expired—that Plaintiffs learned Defendant may be able to produce the identities after all. (*Id.*; *see also* Doc. 55 at 4; Doc. 62-2 at 2, 4–5). Indeed, Sheriff Neil indicated that the Sheriff's department could produce staff and cell assignment records containing the identities sought. (Doc. 62-2 at 2, 4–5). On these facts, it does not appear that Plaintiffs could have brought the Motion to Compel until Sheriff Neil's May 10, 2019 deposition—at the earliest. (*Id.*; *see also* Doc. 62 at 4, 7; Doc. 64 at 2).

Additionally, an acceptable explanation exists for Plaintiffs' post-deposition delay in bringing the discovery dispute to the Court's attention. (*See* Docs. 52, 62). Based on the record before the Court, Plaintiffs followed up with Defendant on July 29, 2019 and asked Defendant to produce certain HCJC employee/staff and inmate identities in light of Sheriff Neil's deposition testimony. (Doc. 63-6 at 1).

However, Plaintiffs encountered yet another obstacle in early September 2019. (Doc. 54 at 2). Specifically, Plaintiffs' counsel lost all ability to communicate with its client (Ms. Moll). (*Id.*) According to a filing submitted by Plaintiffs' counsel, Ms. Moll

11

continues to struggle with substance abuse. (*Id.*) And, as a result of that continued struggle, Ms. Moll was "incommunicado" between early September 2019 and late December 2019. (*Id.*; *see also* Doc. 55 at 5).

Given Ms. Moll's absence, Plaintiffs' counsel was unable to communicate with her about the direction of this case. (*See* Doc. 54 at 2). To its credit, though, Plaintiffs' counsel acted with appropriate diligence in pursuing the matters at issue in the Motion to Compel once Ms. Moll was located (on December 27, 2019). (*See id.*). Indeed, Plaintiffs apprised the Court of the instant discovery within three days. (*Id.*) And Plaintiffs scheduled a discovery conference within a reasonable period of time thereafter. (*See* Min. Entry & Not. Order, Feb. 18, 2020).

All things considered, as it does not appear that Plaintiffs could have filed the Motion to Compel before Sheriff Neil's May 10, 2019 deposition, and as an acceptable explanation exists for Plaintiffs' post-deposition delay in bringing this discovery dispute the Court's attention, the Court concludes that this case presents the type of "special circumstances" justifying the consideration of a post-discovery deadline motion to compel. *Accord Kline v*, 2015 WL 6157915, at \*5; *Nathan*, 2012 WL 5342711, at \*7.

Bolstering this conclusion is the simple fact that, whenever possible, cases should be resolved on their fully explored merits. *Cf. United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (confirming that the purpose of discovery is to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent"). And, under the unique facts of this case, it would not be equitable to deny Plaintiffs the opportunity to seek such fulsome discovery.

12

For all these reasons, the Court cannot conclude that Plaintiffs have waived the right to file their Motion to Compel on the basis of untimeliness.[10]

## B. The Motion's Merits

With the threshold matter addressed, the Court turns to the merits of the Motion to Compel. In the Motion to Compel, Plaintiffs seek three categories of information from Defendant: (1) the Employee Identities; (2) the Inmate Identities; and (3) the Documents. (Doc. 62 at 1–2). *Infra*, the Court considers whether Plaintiffs are entitled to each of these three categories of information in turn.

### 1. *Plaintiffs are entitled to the Employee Identities*

First, Plaintiffs seek the Employee Identities from Defendant. (*See id.*). As set forth *supra*, the Employee Identities constitute the names/contact information of the employees/staff who: "guarded/supervised/monitored [Ms.] Moll while she was housed in the medical pod"; "determined how, and at what time . . . to transport Moll to [the hospital]"; and "were in the vehicle when Plaintiff Moll was transported to [the hospital] . . . ." (*Id.*)

Defendant argues that the Court should not compel the production of the Employee Identities, because the Employee Identities are not relevant to Plaintiffs'

---

[10] Here, one final point is appropriate. Defendant informs the Court that, notwithstanding Sheriff Neil's testimony, it remains unclear whether the Sheriff's department can locate staff and cell assignment records dating back to 2014. (Doc. 63 at 8–9). But this point is unpersuasive. As an initial matter, Sheriff Neil's testimony certainly indicates that such staff and cell assignment records are ascertainable by the Sheriff's department. (*See* Doc. 62-2 at 4–5 ("[W]e have rosters that cover who's working where and what time of the day."); *id.* at 2 ("[W]e have records of where every offender is housed.")). And, in any event, the mere fact that information *may* not exist does not excuse a party from looking for it in the first place.

claims, because Plaintiffs did not specifically request the Employee Identities during discovery, and/or because Defendant has already produced the information Plaintiffs seek to compel. (*See* Doc. 63 at 2–10). On review, the Court finds Defendant's arguments unpersuasive.

As an initial matter, the Employee Identities are relevant to Plaintiffs' claims. In their Complaint, Plaintiffs allege that Defendant has violated § 1983 by, *inter alia*, failing to adequately hire, train, and/or supervise the employees/staff who interacted with Ms. Moll at HCJC. (Doc. 1 at ¶¶ 20–44). It seems plain to the Court that, in order for Plaintiffs assess whether the employees/staff who interacted with Ms. Moll were adequately hired, trained, and/or supervised, Plaintiffs must first be able to determine who, exactly, those employees/staff are. Relevance thus exists. *Accord* Fed. R. Evid. 401(a).

Moreover, Plaintiffs requested the Employee Identities with sufficient specificity during discovery. Interrogatory No. 5 sought the identities of the persons "involved in [Ms. Moll's] supervision and/or medical care"; Interrogatory No. 10 sought the identities of the persons who decided "[Ms.] Moll had to wait until a [] 'shift change'" to leave HCJC; and Interrogatory No. 11 sought the identities of the persons "who transported . . . Ms. Moll [to the hospital.]" (*Id.* at 4–7). On review, it is difficult to see how Plaintiffs could have sought the employee/staff identities now at issue with greater specificity.[11] (Doc. 62 at 1–2).

---

[11] Notably, Defendant argues that Interrogatory No. 5 should not have elicited the Employee Identities, because Interrogatory No. 5 was "directed at the discrete issue of medical care."

Finally, Defendant has not already produced the information Plaintiffs seek to compel. Defendant argues that it has satisfied Plaintiffs' request for the identities of the persons who decided when/how to send Ms. Moll to the hospital, because it has produced the identity of a nurse practitioner who first concluded that Ms. Moll required hospital care. (Doc. 63 at 7). Defendant also argues that it has satisfied Plaintiffs' request for the identities of the persons who transported Ms. Moll to the hospital, because it has produced the identity of one of the officers assigned to Ms. Moll's transport team (Officer Harris). (*Id.* at 8).

Both of these arguments fail for the same reason. (*See id.* at 7–8). Certainly, Defendant has produced *some* identities in response to Plaintiffs' Interrogatories. But, if other responsive identities exist, those identities must be produced as well. To the extent that employees/staff <u>other than</u> the nurse practitioner helped decide when/how to transport Ms. Moll to the hospital, and to the extent that employees/staff <u>other than</u> Officer Harris were in the vehicle when Ms. Moll was transported to the hospital, the identities of those employees/staff are relevant to Plaintiffs' claims, responsive to Plaintiffs' requests, and thus subject to production (to the extent they exist).

All things considered, the Employee Identities must be produced to the extent they exist in Defendant's possession, custody, or control.

---

(Doc. 63 at 5 (emphasis removed)). But the Court finds this argument unpersuasive. On its face, Interrogatory No. 5 sought the identities of persons involved in Ms. Moll "***supervision*** and/or medical care." (Doc. 62-1 at 4 (emphasis added)). Certainly, Defendant's employees/staff supervised Ms. Moll at HCJC. Thus, their identities are responsive to this Interrogatory.

2. *Plaintiffs are entitled to the Inmate Identities*

Second, Plaintiffs seek the Inmate Identities from Defendant. (*See* Doc. 62 at 2). As set forth *supra*, the Inmate Identities constitute the names/contact information of the "other inmates housed with [Ms.] Moll in the medical pod . . . ." (*Id.*) In particular, the Inmate Identities constitute the name/contact information of an "inmate who [allegedly] tried to assist [Ms.] Moll in getting medical attention (by calling out and/or pressing the call button in the cell)." (*Id.*)

Defendant argues that the Court should not compel the production of the Inmate Identities, because the inmate Identities are not relevant to Plaintiff's claims, because Plaintiffs did not specifically request the Inmate Identities during discovery, and/or because Defendant has properly objected to producing the information Plaintiffs seek to compel. (*See* Doc. 63 at 2–10). On review, the Court again finds Defendant's arguments unpersuasive.

As an initial matter, the Inmate Identities are relevant to Plaintiffs' claims. In their Complaint, Plaintiffs allege that, while Ms. Moll was housed in the medical pod, she informed Defendant's employees/staff that she was experiencing pain/contractions, but Defendant's employees/staff failed to promptly heed her complaints. (Doc.1 at ¶¶ 14–16). As Plaintiffs correctly note, the other inmates housed in the medical pod with Ms. Moll will be able to corroborate (or dispute, for that matter) Ms. Moll's account of how Defendants' employees/staff responded to her complaints—and thus provide insight into their supervision/training. (*See* Doc. 64 at 6–7). The Inmate Identities are relevant. *Accord* Fed. R. Evid. 401(a).

16

Moreover, Plaintiffs requested the Inmate Identities with sufficient specificity during discovery. Plaintiffs' Interrogatory No. 2 sought the identities of any persons suspected to have "knowledge and/or information relevant to the instant action . . . ." (Doc. 62-1 at 3). Standing alone, this request is broad. (*Id.*) But, when read in connection with the allegations in Plaintiffs' Complaint, this request should fairly have elicited the identities of any persons (including any inmates) who witnessed Ms. Moll's alleged attempts to obtain medical care from Defendant's employees/staff.[12] (Doc. 1 at ¶¶ 14–16). Thus sufficient specificity exists.

Finally, Defendant has not advanced a meritorious objection in opposition to the Inmate Identities' production. Defendant claims that it cannot disclose the Inmate Identities, because they are protected from disclosure by HIPAA. (Doc. 63 at 8–9). But HIPAA allows a qualified entity to disclose protected health information in response to a discovery request when a qualified protective order exists. *See* 45 C.F.R. § 164.512(e)(ii)(B); *see also* 45 C.F.R. § 164.512(e)(ii)(B) (stating further that a "covered entity may disclose protected health information in the course of any judicial or administrative proceeding . . . [i]n response to an order of a court . . .").

Here, Plaintiffs have indicated that they are amenable to the entry of an appropriate protective order. (*See* Doc. 64 at 5 n.1). And, as such, production of the

---

[12] The Court would also note that, as set forth in Section I.B.1 n.5 *supra*, it appears that Plaintiffs inquired regarding the identities of the inmates housed in the medical with Ms. Moll during the discovery period. (*See* Doc. 62 at 4, 7; *see also* Doc. 63-6 at 1; Doc. 64 at 2). This inquiry lends further support to the conclusion that Plaintiffs fairly requested the Inmate Identities during discovery.

Inmate Identities is both possible and appropriate once one is docketed. *Accord Sanford v. Stewart*, No. 5:11-CV-2360, 2012 WL 5271692, at *3 (N.D. Ohio Oct. 24, 2012) (noting that HIPAA would not bar the production of protected health information, in the context of a case where a qualified protective order had been entered); *Jack v. Allied Sys. Ltd.*, No. 3:05-CV-125, 2010 WL 11538459, at *2 (S.D. Ohio June 1, 2010) (ordering the production of protected health information under HIPAA).

Upon the entry of a qualified protective order, the Employee Identities must be produced to the extent they exist in Defendant's possession, custody, or control.

### 3. *Plaintiffs are entitled to the Documents*

Third (and finally), Plaintiffs seek the Documents. (*See* Doc. 62 at 2). As set forth *supra*, the Documents sought include: (1) "Defendant's deputy/corrections officer Training Manual"; (2) "[e]mployment (including training) files/records" for any employees/staff identified by Defendant; and (3) "[r]ecords (including assignment sheets, logs, etc.) reflecting the" identities sought in the Motion to Compel. (*Id.*)

Defendant argues that the Court should not compel the production of the Documents, because the Documents are not relevant to Plaintiff's claims, and/or because Plaintiffs did not specifically request the Documents during discovery. (Doc. 63 at 2, 10–12). On review, Defendant's arguments are unavailing.

As an initial matter, all of the Documents are relevant to Plaintiffs' claims. As stated *supra*, Plaintiffs allege that Defendant has violated § 1983 by, *inter alia*, failing to adequately hire, train, and/or supervise the employees/staff who interacted with Ms. Moll at HCJC. (Doc. 1 at ¶¶ 20–44). On careful consideration, both the Training Manual and

18

the employment/training files would aid Plaintiffs in determining whether HCJC's employees/staff were adequately trained to deal with inmates (like Ms. Moll) who suffer from serious medical conditions. And, as to the assignment records, such records would aid Plaintiffs in locating any employees/staff and inmates who could corroborate (or dispute, for that matter) Ms. Moll's account of how Defendant's agents interacted with her at HCJC. For these reasons, relevance exists. *Accord* Fed. R. Evid. 401(a).

Moreover, Plaintiffs sought the Documents with sufficient specificity during discovery. On the Court's review, there is little question that Plaintiffs fairly requested the employment/training files from Defendant during discovery. (Doc. 62 at 2; Doc. 62-1 at 7). Indeed, Document Request No. 2 specifically directed Defendant to produce "personnel files (and/or any other such work-related file[s] . . .) for each and every person identified in response to Plaintiffs' [Interrogatories.]" (Doc. 62-1 at 7).

Whether Plaintiffs fairly asked for the remaining Documents presents a closer question. The only Document Request that encompasses the remaining documents is Plaintiffs' demand for "[a]ll documents relating or related to the instant action, including, but not limited to, Plaintiffs' Complaint and Defendant's defenses thereto" (Document Request No. 1). (*Id.*) Document Request No. 1 is, of course, broad. (*See id.*). And the Court is cognizant of the fact that overly broad document requests are generally disfavored. *See* Fed. R. Civ. P. 34(b)(1)(A).

However, when Document Request No. 1 is considered in connection with Plaintiffs' Complaint, sufficient specificity exists. (*See* Doc. 1 at ¶¶ 20–44). It seems readily apparent to the Court that, in a case such as this, where a plaintiff has alleged that

19

a defendant's employees/staff acted without appropriate training/supervision, documents reflecting the defendant's training practices are of plainly responsive. Also plainly responsiveness are documents reflecting the identities of the persons with whom the plaintiff interacted at the time of the alleged wrongdoing.

Given the foregoing, the Court concludes that Document Request No. 1, though broad, fairly requested the Training Manual and the assignment records from Defendant during discovery. (Doc. 62 at 2; Doc. 62-1 at 7). Again, bolstering this conclusion is the simple fact that, whenever possible, cases should be resolved on their fully explored merits. *Cf. Procter*, 356 U.S. at 682. And here, the Court concludes that the Training Manual and the assignment records are fundamental to a fulsome consideration of the merits of Plaintiffs' claims.

All things considered, the Documents must be produced to the extent they exist in Defendant's possession, custody, or control. As a final point, the Court would note that, if any of the Documents contain confidential information, (Doc. 63 at 12), the Court would be amenable to entering a reasonable stipulated protective order.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's Motion to Compel (Doc. 62) is **GRANTED**. Accordingly:

1. Within 14 days of the date of this Order, the parties **SHALL** jointly submit a proposed stipulated protective order to the Court, designed to:

    a. Enable the production of the Inmate Identities, in accordance with applicable HIPAA regulations; and

     b.   Address any confidentiality concerns Defendant has with regard to the production of the information discussed in this Order.

     c.   The proposed stipulated protective order shall be submitted via joint email to Chambers (black_chambers@ohsd.uscourts.gov).[13]

2. Within 28 days of the date of this Order, Defendant **SHALL** produce the following information to Plaintiffs, to the extent that such information exists in Defendant's possession, custody, or control:

     a.   The Employee Identities, as defined in section III.B.1, *supra*;

     b.   The Inmate Identities, as defined in Section III.B.2, *supra*; and

     c.   The Documents as defined in Section III.B.3, *supra*.

3. If any Employee or Inmate Identities are disclosed to Plaintiffs pursuant to paragraph 2, and if Plaintiffs desire to depose any of the persons identified pursuant to paragraph 2, the following process **SHALL** govern:

     a.   Counsel must telephonically confer on or before April 30, 2021;

     b.   At the teleconference, counsel must discuss whether they can agree that certain expedited depositions are appropriate; and

     c.   If counsel cannot reach an agreement, Plaintiffs must file any motion to reopen discovery for the <u>limited purpose of conducting the expedited depositions</u> on or before May 21, 2021.

4. On or before May 7, 2021, the parties **SHALL** jointly apprise the Court of their discovery progress via joint email to Chambers (black_chambers@ohsd.uscourts.gov).

5. The Court finds that a Rule 37(a)(5)(A) award of expenses would **NOT** be just.

**IT IS SO ORDERED.**

Date: _3/30/2021_                                      *Timothy S. Black*

                                          Timothy S. Black
                                        United States District Judge

---

[13] The Southern District of Ohio maintains draft protective orders at the following URL: https://www.ohsd.uscourts.gov/protective-orders.